# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 03-3469

| | | |
|---|---|---|
| Christopher L. Falcone, | * | |
| | * | |
| Plaintiff - Appellant, | * | 01-cv-1181 JRT/SRN |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| University of Minnesota, | * | |
| | * | |
| Defendant - Appellee. | * | |

Submitted: June 16, 2004
Filed: November 15, 2004

Before LOKEN, Chief Judge, JOHN R. GIBSON and BYE, Circuit Judges.

LOKEN, Chief Judge.

When Christopher Falcone was admitted to the University of Minnesota Medical School, he advised the University's Disability Services Office that he suffers from learning disabilities. Falcone received accommodations but was dismissed from the medical school after failing three clinical courses. He then commenced this action, claiming the dismissal violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). The district court[1] granted summary judgment in favor of the University, and Falcone appeals. Reviewing the grant of summary judgment de novo,

[1]The HONORABLE JOHN R. TUNHEIM, United States District Judge for the District of Minnesota.

and viewing the facts in the light most favorable to Falcone, we affirm. See Amir v. St. Louis Univ., 184 F.3d 1017, 1024 (8th Cir. 1999) (standard of review).

## I. Background.

The University divides its four-year medical school curriculum into two parts. After two years of courses in a classroom setting, students undertake clinical rotations during the third and fourth years. When Falcone began taking classroom courses in September 1995, he was allowed extra test time, flexible deadlines, and tutoring, accommodations similar to those afforded when he obtained undergraduate and master's degrees from Berkeley and the University of Illinois. By November 1995, he was nevertheless failing two first year courses and had missed an exam in a third course. The University's Committee on Student Scholastic Standing ("COSSS") recommended that he switch to a part-time schedule, and Falcone agreed.

In the 1995-96 academic year, Falcone successfully completed five of fourteen Year One courses, but he failed Human Genetics and was therefore required to appear before COSSS. After an August 1996 meeting, COSSS advised Falcone that he must complete the nine remaining Year One classes, including Human Genetics, during the 1996-97 academic year. Failure to do so, COSSS warned, "may result in a hearing for dismissal." Falcone also consulted with a Disability Services Specialist and agreed to the following accommodations: double time and a private room for examinations, a microscope and slides for home use, student notes, and regular meetings with his faculty mentor. Falcone nonetheless failed Pathophysiology II in March 1998 and Pathophysiology IV in May 1998. COSSS permitted him to take make-up exams in these courses, despite a medical school policy that students below the eighty percent passing rate may not retake examinations. With this additional accommodation, Falcone completed his two years of classroom courses and began clinical rotations in the summer of 1998.

Falcone failed the Pediatric Neurology clinical rotation in the following winter quarter. The Associate Dean for Student Affairs wrote him advising that he must appear before COSSS to request permission to repeat the course. If permission was denied, the Dean explained, or if permission was granted and he again failed, or failed any other clinical course, "a hearing for dismissal will be held." Falcone appeared before COSSS in February 1999. He explained that he failed Pediatric Neurology because he was petrified by the fragile babies, intimidated by the faculty, and unprepared for the rotation. After a Disability Specialist developed a new list of accommodations for his clinical rotations,[2] COSSS allowed Falcone to repeat the pediatric neurology rotation but warned that "if you fail another clinical rotation, you will be subject to a hearing for dismissal." A letter defining the new accommodations was sent to Falcone's clinical rotation instructors. At least two may not have received the letter, and another told Falcone it made him look incompetent.

Falcone failed the Clinical Medicine IV rotation in October 1999 and appeared before COSSS in December. COSSS allowed Falcone to remain in school and retake the course because he was not provided reasonable accommodations but expressed "substantial concerns about your overall readiness to obtain an M.D. degree." Falcone then failed Emergency Medicine in February 2000, his third failure in a clinical course. After a lengthy hearing, COSSS unanimously voted to dismiss him from the medical school. In an April 3, 2000, letter notifying Falcone of the decision, the Chair of COSSS wrote:

> The Committee based its decision to dismiss you primarily on two factors: (1) the Committee felt that you had received appropriate accommodations on the Emergency Medicine rotation as requested by

---

[2]The accommodations included double time and a private environment for exams, flexible breaks during the day, permission to use checklists for clinical procedures and to take notes during meetings, and "access to at least weekly, regularly scheduled feedback meetings" with the instructors.

> Disability Services; and (2) you have been unable to demonstrate, with or without accommodations, that you can synthesize data obtained in a clinical setting to perform clinical reasoning, which is an essential element of functioning as a medical student and ultimately as a physician.

Falcone appealed this decision and again appeared before COSSS, expressing the view that he "could become a physician scientist and have a bright future in basic research." COSSS voted unanimously not to reinstate him. The Chair's letter to Falcone explained that COSSS "continues to believe that you cannot adequately synthesize data obtained in a clinical setting to perform clinical reasoning . . . . Without these skills, the Committee believes you could compromise patient safety as a physician."

## II. Discussion.

Section 504 provides, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability . . . be denied the benefits of . . . any program or activity receiving Federal financial assistance . . . ." Section 504 applies to postgraduate education programs that receive or benefit from Federal financial assistance. See 45 C.F.R. § 84.41. However, the statute does not require an educational institution to lower its standards for a professional degree, for example, by eliminating or substantially modifying its clinical training requirements. "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." Southeastern Cmty. Coll. v. Davis, 442 U.S. 397, 406 (1979); see 45 C.F.R. § 84.44(a) & App. A ¶ 31.

To avoid summary judgment on his wrongful dismissal claim, Falcone must present sufficient evidence that he was disabled, otherwise qualified, and dismissed solely because of his disability. See Jeseritz v. Potter, 282 F.3d 542, 546 (8th Cir. 2002); Amir, 184 F.3d at 1029 n.5. The University concedes for purposes of

summary judgment that Falcone is disabled. The issues, then, are whether Falcone presented sufficient evidence that he was "otherwise qualified" to remain in medical school but was nonetheless dismissed solely because of his disability.

**A.** Taking up the easier issue first, we agree with the district court that no rational factfinder could conclude that Falcone was dismissed *solely* because of his learning disabilities. The University explained that Falcone was dismissed because "you have been unable to demonstrate, with or without accommodations, that you can synthesize data obtained in a clinical setting to perform clinical reasoning, which is an essential element of functioning as a medical student and ultimately as a physician." Falcone presented no evidence that this explanation was pretextual, or that the University's decision was a bad faith exercise of its virtually unrestricted discretion to evaluate academic performance. See Bd. of Curators of the Univ. of Mo. v. Horowitz, 435 U.S. 78, 95 (1978) (Powell, J., concurring) (evaluating performance in clinical courses "is no less an 'academic' judgment . . . than assigning a grade to . . . written answers on an essay question"). "We will not invade a university's province concerning academic matters in the absence of compelling evidence that the academic policy is a pretext for [disability] discrimination." Amir, 184 F.3d at 1029.

Falcone argues that he presented sufficient evidence of bad faith because he was not provided all the accommodations listed in the Disability Specialist's letter in every clinical rotation. However, it is uncontroverted that the University made numerous accommodations throughout Falcone's medical school career, bending its policies and giving him additional chances when his performances raised serious concern about his ability to function as a physician. Despite these accommodations, Falcone failed three clinical courses, after he failed numerous classroom courses before finally completing that part of the curriculum. "Nothing in the record suggests that the University's decision was based on stereotypes about [Falcone's disability] as opposed to honest judgments about how [he] had performed in fact and could be expected to perform." Anderson v. Univ. of Wis., 841 F.2d 737, 741 (7th Cir. 1988);

see Hines v. Rinker, 667 F.2d 699, 703 (8th Cir. 1981) ("no genuine issue of material fact is presented . . . where the record provides ample evidence of the dismissed student's scholastic ineptitude") (quotation omitted).

The University was not required to tailor a program in which Falcone could graduate with a medical degree without establishing the ability to care for patients. Based on the uncontroverted evidence of Falcone's academic deficiencies, the only reasonable inference from this record is that he was dismissed because of the University's genuine concern about his inability to synthesize clinical data.

**B.** In addition, we agree with the district court's alternative ground, that Falcone failed to present sufficient evidence that he was otherwise qualified to remain in the University's medical school program. It is undisputed that Falcone was not qualified to remain in medical school without accommodations. He then bears the burden "to establish that reasonable accommodations for his disability would render him qualified for the medical school program." Stern v. Univ. of Osteopathic Med. & Health Scis., 220 F.3d 906, 909 (8th Cir. 2000).

Falcone argues that genuine issues of material fact preclude summary judgment on this issue because he did not receive one of the agreed accommodations in all his clinical courses -- access to at least weekly, regularly scheduled feedback meetings with each instructor -- and because his performance improved in clinical rotations when he received that level of feedback. In prior medical school cases, the issue has been whether the students requested reasonable accommodations that the universities refused to provide. See Stern, 220 F.3d at 908-09; Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1048-51 (9th Cir. 1999). Here, on the other hand, the parties agreed on the accommodations to be provided, but Falcone argues they were imperfectly delivered. The University's COSSS disagreed and also concluded that he was, in any event, academically unfit. The latter point is critical -- even if there is a genuine fact dispute over whether the feedback accommodation was perfectly

implemented, Falcone must still show that, if it had been perfectly implemented, he would have passed the clinical courses that he failed. We agree with the district court that Falcone did not meet this burden.

The University presented abundant evidence supporting its conclusion that no amount of additional feedback would have made Falcone "otherwise qualified" to remain in school and receive a medical degree. In Emergency Medicine, Falcone acknowledged that he received feedback at the end of each shift from the residents with whom he worked and never approached the course instructors for additional feedback, yet he failed that course, his third failure in a clinical rotation. In Renal Medicine, a clinical course in which Falcone praised the level of feedback provided, the instructor did not issue a grade because Falcone's "fundamental abilities for clinical medicine were not sufficient," and he was "not able to handle the load and working pace of an intern in an internal medicine program." In addition, Falcone's Pediatric Neurology instructor had "great reservations about [his] ability to practice medicine." His Otolaryngology instructor noted his inability "to synthesize the information at hand into a practical, workable plan." And his Surgery instructor noted that all faculty and residents who worked with Falcone "expressed concern with his ineptitude to relate with patients."

Falcone did not controvert this evidence, nor did he present evidence other than his own opinion that he would have become "otherwise qualified" had he been provided more or better instructor feedback. Falcone failed an unacceptable number of clinical courses because he could not "synthesize data obtained in a clinical setting to perform clinical reasoning." He failed to present evidence showing that more feedback or better delivery of any other agreed accommodation would have cured this deficiency. Accordingly, the grant of summary judgment on this issue was proper.

The judgment of the district court is affirmed.

---



A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
THOMAS F. EAGLETON COURT HOUSE
ROOM 24.329
111 S. 10TH STREET
ST. LOUIS, MISSOURI 63102

MICHAEL E. GANS
Clerk of Court

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

December 29, 2004

RECEIVED
BY MAIL
JAN - 3 2005
CLERK US DIST COURT
MINNEAPOLIS MN

Mr. Richard Sletten
Clerk
U.S. DISTRICT COURT, MINNESOTA
202 U.S. Courthouse
300 S. Fourth Street
Minneapolis, MN 55415

Re: 03-3469 Christopher Falcone vs. Univ. of Minnesota

Dear Clerk:

The mandate of this Court is being sent to the clerk of the district court, together with a receipt. The clerk of the district court is requested to sign, date, and return the receipt to this office.

Any district court records in this court's possession will be returned shortly.

(5175-010199)

Sincerely,

Michael E. Gans

Michael E. Gans
Clerk of Court

dms

Enclosure

(LETTER FOR INFORMATIONAL PURPOSES ONLY)

---

cc: Honorable John R. Tunheim
Gregg Marlowe Corwin
Jennifer Lynn Frisch
Marianne Eileen Durkin

District Court/Agency Case Number(s): CIV 01-1181 JRT/SRN